**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

---

JESSIE BARNES, 97-B-1784,

                              Plaintiff,

                  -vs-              DECISION AND ORDER

JOHN ALVES, *et al.*,[1]                    01-CV-6559CJS(B)

                              Defendants.

---

**Siragusa, J.** Before the Court is Plaintiff's letter application, dated September 22, 2009, seeking injunctive relief. Plaintiff has moved for entry of an order directing Superintendent Mark L. Bradt to permit him to "attend law library a minimum of (4) four days a week," and "to provide Plaintiff … with at least (1) full writing pad legal supplies on a weekly basis." (Jessie J. Barnes letter to the Court, Sep. 22, 2009.[2]) Plaintiff's application does not explain the basis for his request, but cites to Department of Correctional Services (DOCS) Directive 4483, which the Court has obtained from the DOCS official Internet web page. That directive states in pertinent part as follows:

> B. <u>Law Library Hours/Access</u>. The Law Library shall be open for access a minimum of seven hours per day, at least six days per week, or six hours per day, seven days per week, unless a written variance has been issued by the Department's Law Library Coordinator. The Law Library may be closed, however, for some or all legal holidays, without need for a variance, if the

---

[1] Defendant John Alves was dismissed from the case on December 3, 2007; however, his name was retained as the lead defendant for ease of identifying this lawsuit. In addition, of the 96 defendants originally named, only Randy Banks, Courtney Bennett, T. Berg, Carol Bubcaz, D. Davis, Thomas Dinninny, Gregory Hungerford, James Marshall, Angelo Mastrantonio, Peter Mastrantonio Jr., Donald McIntosh, T. Murley, B. Potter, Franklin Raub, M. Vandegrift, Paul Weed, and H. Wetzel remain defendants in this case.

[2] Both this letter, and the September 18, 2009, letter, referenced below, indicate that they have been copied to defense counsel; however, neither was accompanied by a certificate of service. In view of Plaintiff's *pro se* status, the Court will consider the application. However, Plaintiff is advised that he is required to serve copies of all motions on defense counsel and submit proof of that service with any application for a court order.

> Law Library Administrator determines that such closures will not significantly impact on inmate access to the courts.
>
> General population inmates shall have physical access to and use of the Law Library. To the extent possible, all inmates requesting access to the Law Library shall be scheduled for access in a manner which ensures equal opportunity. To the extent possible, requests for access shall be granted as soon as possible. Requests for special access (continuous or repetitious to meet a legally defined deadline) shall be addressed to the Law Library Administrator.
>
> C. <u>Order of Service</u>. Requests for use of Law Library resources will be answered and provided on a "first come - first served" basis. Whenever requested material is in use, or a request for use cannot be promptly granted, a chronological reserve list will be maintained to determine subsequent use.
>
> D. <u>Cell Study Services</u>. Inmates prohibited by their confinement status from visiting the Law Library shall be allowed to study Law Library materials in their cells and obtain legal services normally available to general population inmates. Such inmates may request, in writing, a maximum of two items per day and these will be delivered, if available, within 24 hours of receipt of the request. Inmates may retain said legal materials for a period of not less than 16 hours nor more than 24 hours. Whenever feasible, in-cell use of Law Library materials shall be scheduled during hours the Law Library is not open so they can be returned and be available for general population use during regular hours. In extenuating circumstances and with the permission of the Law Library Coordinator, facility Law Library Supervisors may loan photocopies of requested Law Library materials rather than the materials themselves.

(DOCS Directive No. 4483, Mar. 28, 2002, ¶ III.B.)

In a letter dated September 18, 2009, received by the Court on the same day as Plaintiff's letter application, he included additional information regarding his inability to access the law library at Elmira Correctional Facility. He alleges that Officer S. Lee is "using a prisoners [sic] law library access, legal supplies and access to court as a pawn to be a ruthless tyrann [sic]." (Jessie J. Barnes letter to the Court, Sep. 18, 2009, at 1.) Attached to Plaintiff's letter to the Court is one dated September 16, 2009, and addressed to Jean Botta, Director of Law Library Services for DOCS. The letter indicates that copies

2

went to the New York Attorney General's Office and to Plaintiff. It is unclear whether the letter, which appears to be an original, not a copy, ever was sent to Ms. Botta. In the letter, Plaintiff states that a "vindictive sinnister [sic] officer name[d] S. Lee … using prisoners['] access to the law as a springboard to harass them." He claims that S. Lee has refused his request for even a single writing pad. Plaintiff further alleges, that although he has put in over twenty law library request slips, he has been "called out" only once. Further, he states that "this S. Lee is rude and has threatened that I will not be getting called out anymore." (Jessie J. Barnes letter to Jean Botta, Sep. 16, 2009, at 1.) Also attached to Plaintiff's September 18 letter is one addressed to Mark L. Bradt, Superintendent of Elmira Correctional Facility, dated September 17. 2009. This letter also appears to be an original, and indicates that a copy was given to the Court. In this correspondence, he makes allegations concerning S. Lee and the denial of law library access and legal supplies. Finally, also attached to the September 18 letter is a carbon copy of what Plaintiff has titled "Inmate Grievance Complaint," dated September 15, 2009. In the grievance, Plaintiff makes similar allegations against S. Lee.

The Court construes Plaintiff's letter application as a request for injunctive relief under Federal Rule of Civil Procedure 65. That rule states in pertinent part, "[t]he court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). If the Court were to construe Plaintiff's application as requests for entry of temporary restraining orders, it would have to find that,

> specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and … the movant's attorney certifies in writing any efforts made to give the notice and the reasons why it should not be required.

3

Fed. R. Civ. P. 65(b)(1)(A) & (B). Further, to grant either a temporary restraining order or a preliminary injunction, a plaintiff must make a showing of: (1) irreparable harm; and either (2) likelihood of success on the merits; or (3) sufficiently serious questions going to the merits to make them a fair ground for litigation; and (4) a balance of hardships tipping decidedly in favor of the movant. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). In the Second Circuit, the standard for a temporary restraining order is the same as for a preliminary injunction. *See Jackson v. Johnson*, 962 F. Supp. 391, 392 (S.D.N.Y. 1997) (citations omitted).

In his application, Plaintiff requests affirmative relief, not merely a return to the status quo. In that situation, the Second Circuit has written:

> The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. *See Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir.1985). A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act. *See id.*… [T]his distinction is important because we have held that a mandatory injunction should issue "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Id.* (internal quotations and citations omitted); *see also SEC v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir.1990) (injunction going beyond preservation of status quo requires "a more substantial showing of likelihood of success"); *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 441 (2d Cir.1977). The "clear" or "substantial" showing requirement-the variation in language does not reflect a variation in meaning-thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success. *See Unifund SAL*, 910 F.2d at 1039.

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995).

The Court determines that Plaintiff has not met the threshold requirements for injunctive relief, outlined above, and additionally, that he has not shown how the Court has jurisdiction over the individual he names, S. Lee, who is not a party to his lawsuit. Plaintiff

4

has evidently taken the necessary preliminary steps to resolve this issue through the DOCS Inmate Grievance Program, a required prerequisite to bringing a complaint in Federal court. However, he has not shown that he is entitled to a mandatory injunction since he has not made a clear showing that he entitled to the relief he seeks, or that extreme or very serious damage will result from a denial of preliminary relief. Accordingly, it is hereby,

ORDERED, that Plaintiff's letter application of September 22, 2009 (as amplified by his letter of September 18, 2009), seeking injunctive relief is denied.

SO ORDERED.

Dated: September 29, 2009
Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge