UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JESSIE J. BARNES, 09-B-2707,

        Plaintiff,

            v.

JOHN ALVES, et al.,[1]

        Defendants.

_____

**DECISION AND ORDER**

01-cv-6559 EAW

## INTRODUCTION

Plaintiff Jessie J. Barnes ("Plaintiff") is an inmate currently housed at the Upstate Correctional Facility in Malone, New York.  Plaintiff, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendant employees of Southport Correctional Facility (collectively "Defendants") violated Plaintiff's civil rights through the unlawful use of excess force in 2001 and 2002, while Plaintiff was housed at the Southport facility.  (Dkt. 248).  The case has been pending since November 26, 2001.  (Dkt. 1).  The case is scheduled for a bench trial to start on July 28, 2014.  (Dkt. 386).

Before the Court are various motions filed by Plaintiff in anticipation of the upcoming bench trial.  (Dkt. 327, 389, 395, 402, 404, 405, 406, 408, 412, and 419).  The motions are opposed by Defendants in declarations dated January 6, 2014, March 25,

---

[1]     Defendant John Alves was dismissed from the case on December 3, 2007; however, his name is retained as the lead defendant for ease of identifying this lawsuit.

2014, April 9, 2014, and April 29, 2014.  (Dkt. 374, 391, 400, and 414).  The various motions are addressed in turn below.

## DISCUSSION

I.   **Motion *in Limine* and Motion for Sanctions Regarding B-Block Surveillance Tapes (Dkt. 327 & Dkt. 395)**

A.   **Motion *in Limine* (Dkt. 327)**

On April 30, 2010, Plaintiff submitted a letter to the Honorable Jonathan W. Feldman, United States Magistrate Judge, which this Court construes as a motion *in limine*.  (Dkt. 327).  Plaintiff stated that "the Defendants and their counsel Mr. Levine have not admitted or denied the facts asserted with regard to destruction of B-Block videotape evidence in connection with the Sept. 4, 2002 and Oct. 22, 2002 use of force incidents."  (*Id.*).  Plaintiff requests that the Court sanction the Defendants or preclude Defendants from offering evidence or testimony with regard to "above incidences."  (*Id.*).

In a Decision and Order dated January 6, 2014, the Honorable Charles J. Siragusa, United States District Judge, directed Defendants to respond to Plaintiff's motion *in limine* by January 24, 2014.  (Dkt. 372).  Defendants' counsel, Assistant Attorney General Gary Levine, responded to the motion through his January 16, 2014 declaration. (Dkt. 374).  In this declaration, Defendants deny destroying any videos, and Mr. Levine indicates that he is in possession of the videos relating to the incidents.  (*Id.* at 1). According to Mr. Levine, Plaintiff was provided with copies of the videos and also viewed the videos at his deposition.  (*Id.* at 2).  Mr. Levine states that "it is anticipated that the testimony at trial will support that the video is a true and accurate representation of the incident." (*Id.* at 3).

- 2 -

As a result of the foregoing, and based upon the underlying factual dispute concerning the alleged destruction of videos, the Court reserves decision on the motion until the time of trial.

**B.     Motion for Sanctions (Dkt. 395)**

By motion dated March 28, 2014, Plaintiff seeks sanctions against Defendants for the "spoliation of evidence." (Dkt. 395 at 1). Specifically, Plaintiff claims that Defendants engaged in the "deliberate and wilful destruction of B-Block surveillance videotape recordings . . . related to the September 4, 2002 and October 22, 2002 incidents. . . ." (*Id.*). Plaintiff claims that he is a "prejudiced party" as a result of the alleged destruction of the original B-Block videotape footage. (*Id.* at 10). Plaintiff notes that he contested the validity of the tape during his deposition testimony, and that he submitted letters to various individuals, including Defendants, to the same effect. (*Id.* at 18-19). Plaintiff seeks that the Court "draw an adverse inference for spoliation of evidence because the plaintiff is 'prejudiced party' as result of defendant use of altered April 18, 2002 stage videotape to dupe court into reliance of as evidence. . . ." (*Id.* at 20).

In response, Mr. Levine submitted an April 9, 2014 declaration indicating that Judge Siragusa addressed Plaintiff's concerns regarding the surveillance videotape, and stated in a January 3, 2014 letter that he would render a decision on the "preclusion of evidence and sanctions." (Dkt. 400 at 2, 76). Defendants ask the Court to reserve decision on the preclusion of the videotape as well as on sanctions for the bench trial. (Dkt. 400 at 2). Defendants argue that the evidence at trial will show that the April 18, 2002 videotape was not altered, and that there were no surveillance videos of the

September 4, 2002 and October 22, 2002 incidents. (*Id.*). Defendants further argue that Plaintiff will be unable to meet his burden of proof to demonstrate spoliation, as he will not be able to show that Defendants (not DOCCS) had an obligation to preserve the evidence and that Defendants destroyed the evidence with a "culpable state of mind." (*Id.* at 2-3) (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).

Based on the foregoing, the Court reserves decision on the preclusion of the videotape and on sanctions until the time of trial.

## II.   Motion for Miscellaneous Relief (Dkt. 389)

On March 19, 2014, Plaintiff submitted a letter request to the undersigned which the Court construes as a motion for miscellaneous relief. (Dkt. 389). In this motion, Plaintiff requests the discovery of two television programs, *Nightline News* and *The View*, in which Plaintiff claims Defendant Bennett appeared. (*Id.* at 1). Plaintiff argues that the Attorney General's office has retained a copy of each of these programs. (*Id.*).

On March 25, 2014, Mr. Levine submitted a declaration to the Court rejecting Plaintiff's claims. (Dkt. 391). Mr. Levine noted that Judge Feldman previously addressed Plaintiff's requests for the television clips, and rejected the request. (*Id.* at 1). A letter from Plaintiff to Judge Feldman requesting the clip from *The View* television show is attached to Mr. Levine's declaration. (*Id.* at 5).

Indeed, the Court has addressed Plaintiff's requests for copies of the television show clips on multiple occasions. Most recently, the undersigned instructed Plaintiff at a March 10, 2014 videoconference to contact ABC News to determine if the tapes are

available, or to have a friend or family member search the internet for the video clips. (Dkt. 384).   Despite these instructions, Plaintiff continues to demand that copies be produced by the Defendants or by defense counsel, who maintain that they do not possess copies of the tapes. (Dkt. 391 at 1).  As a result, Plaintiff's request for the production of the videos is denied.

In his motion for miscellaneous relief, Plaintiff also contends that Mr. Levine never provided Plaintiff with requested hearing tapes or color photos and instead returned the check that Plaintiff sent to pay for the copies.  (Dkt. 389).  Plaintiff claims the returned check was ultimately confiscated for restitution. (*Id.*).

In response, Mr. Levine notes that he consulted Judge Feldman concerning the check, and decided to return the check to Plaintiff.  (Dkt. 391 at 1, 6).  Further, Mr. Levine contends that he has provided Plaintiff with "thousands of pages of documents provided to plaintiff over the past decade" and attaches two color photographs of boxes of documents.  (*Id.* at 1, 3-4).  The Court notes that these images are insufficient to demonstrate that Defendants have indeed submitted discovery materials to Plaintiff, as the pictures do not show the contents of the boxes.

In any event, it does not appear that Plaintiff is seeking any affirmative relief from this portion of his motion, but rather is complaining to the Court about his dissatisfaction with the way that discovery was conducted in his case.  Accordingly, Plaintiff's motion for miscellaneous relief is denied.

### III.   Letter Request for a Jury Trial (Dkt. 402)

On March 27, 2014, Plaintiff submitted a letter to the Court requesting a jury trial. (Dkt. 402). In this letter, Plaintiff claims that Judge Siragusa "resigned" from the case because "he could no longer disadvantage [Plaintiff] in favor of attorney general." (*Id.*). Plaintiff argues that the undersigned cannot preside over the case because she has "continued same prejudice mularky, refusen to appoint counsel for a 13 years under same repetitive garbage." (*Id.*). Plaintiff submits that he is entitled to a jury trial because Judge Siragusa "resigned" and because "Judge Wolford is new." (*Id.*).

"It is well established that the right to a jury trial is a fundamental right and that purported waivers are to be 'scrutinized with the utmost care.'" *S.E.C. v. Masri*, 551 F. Supp. 2d 320, 321 (S.D.N.Y. 2008) (quoting *Heyman v. Kline*, 456 F.2d 123, 129 (2d Cir. 1972)). Fed. R. Civ. P. 38 acknowledges the Seventh Amendment and statutory right to a jury trial. This demand must be timely made. Fed. R. Civ. P. 38. Failure to make a demand constitutes a waiver of a jury trial. *Id.* Pursuant to Fed. R. Civ. P. 39(a)(1), the parties may also stipulate to a bench trial. Even where a party fails to make a proper jury demand, the court may use its discretion to overcome the waiver and order a jury trial. Fed R. Civ. P. 39(b).

A waiver of a jury trial does not have to be formal and may be inferred by the conduct of the parties or counsel. *See Royal American Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1018 (2d Cir. 1989). For example, acquiescing to a bench trial without objection constitutes the waiver of the right to a jury and will not be reversed. *See Kahn v. General Motors Corp.*, 865 F. Supp. 210, 212 (S.D.N.Y. 1994); *see also*

*Power v. Tyco Int'l, Inc.*, No. 02 Civ. 6444(GEL), 2006 WL 1628588, at *2 (S.D.N.Y. June 13, 2006) (denying plaintiff's demand for a jury trial following plaintiff's waiver of a jury trial due to plaintiff's mere inadvertence in failing to initially timely request a jury trial).  Moreover, a *pro se* plaintiff's failure to timely inform the defendants of a jury trial demand constitutes an irreversible waiver of a jury trial.  *See Favors v. Coughlin*, 877 F.2d 219, 220-21 (2d Cir. 1989).  "*[P]ro se* litigants are not treated differently with regard to waiver of a jury right." *Kahn*, 865 F. Supp. at 213.

Here, Plaintiff properly demanded a jury trial in his complaint, and then later requested orally in a video conference that his jury trial be adjourned and rescheduled as a bench trial.  (Dkt. 356).  On August 22, 2012, the Defendants agreed to a bench trial in writing in a letter to the Court.  In a July 4, 2013 letter to the Court, Plaintiff states that he needs a jury trial because "I am convinced now that you are not 'only' bias against me but prejudice and I feel I will be doomed to volunteer my own demise."  Judge Siragusa responded in a July 12, 2013 letter, informing Plaintiff that the Court would schedule a jury trial because Plaintiff is entitled to a jury trial and did not waive a jury trial in writing.  Shortly thereafter, Plaintiff stated in his July 22, 2013 letter to the Court that he would waive a jury trial and submit to a bench trial.  (Dkt. 357).  He attached the formal written waiver of a jury trial.  (*Id.*).

The history of the case shows that Plaintiff willingly and knowingly signed a formal waiver of a bench trial, stating:

> "I, Jessie J. Barnes, the plaintiff in the above-captioned case, move that my demand for a trial by jury of this action be withdrawn and that this action at

law be tried by the Court without a jury.  This motion and request is made under Rule 38(d) of the Federal Rules of Civil Procedure."

(Dkt. 357 at 8).  Further, in the letter to the Court accompanying this waiver, Plaintiff stated, "I have decided to sign the waiver sir sorry for flip-flopping all over the place." (Dkt. 357 at 1).

Moreover, the change in District Judges assigned to this case does not negate Plaintiff's prior waiver.  As an initial matter, contrary to Plaintiff's belief, Judge Siragusa did not "resign" from the case, but rather, he transferred the case to the undersigned in order to redistribute the Court's caseload.  In addition, as explained by the Court in *Kahn*:

> To permit parties to condition jury waivers on having a bench trial before a specific judge would not only corrupt the assignment system in this district but, would disrupt the orderly management of cases generally throughout the Federal courts.  It is a basic proposition that all district judges are equal and that litigants have no right to choose a particular judge once a case has been filed. . . . Cases are assigned by lot to new district judges from the docket of other judges. . . . Litigants know that long pending civil cases may frequently be transferred from one judge to another for disqualification, death, illness, and resignation of a judge.

865 F. Supp. at 214-15.

In sum, the Court is presented with a written waiver of a jury trial.  Because Plaintiff knowingly and formally waived his right to a jury trial, the Court denies Plaintiff's request for a jury trial.  The case will proceed as a bench trial.

## IV.   Motion for Extension of Time to File (Dkt. 404)

By letter dated April 10, 2014, Plaintiff requests a five day extension to submit his request for expert testimony and additional witnesses, to be filed with the Court "before April 21, 2014."  (Dkt. 404).

The Court notes that, pursuant to the Pretrial Order, Plaintiff has until June 1, 2014 to submit his list of expert testimony witnesses. (Dkt 386 at 4). Additionally, Plaintiff has submitted additional requests for the production of witnesses, and these requests are considered below. As a result, Plaintiff's motion for an extension of time to file his request is denied as moot.

## V.    Motion to Compel (Dkt. 405)

By motion dated April 10, 2014, Plaintiff moves to compel Defendant P. Mastrantonio, Jr. to file an amended response to Plaintiff's interrogatories numbers 1-6, 8, 10, and 13-16 from docket entries 29, 31, and 48. (Dkt. 405 at 2). Plaintiff claims that Defendant P. Mastrantino, Jr.'s full response will demonstrate a "plan, motive and intent to retaliate and use excessive force upon Plaintiff. . . ." (*Id.* at 3).

In a declaration dated April 29, 2014, Mr. Levine opposes Plaintiff's motion, and notes that discovery is closed. (Dkt. 414 at 3). Indeed, this Court has previously addressed Plaintiff's motions to compel Defendant Mastrantonio, Jr.'s responses to the same interrogatories. (Dkt. 188-2; Dkt. 371).

In his reply dated May 2, 2014, Plaintiff argues that he should be able to readdress his motion to compel because his original motion was denied without prejudice. (Dkt. 416 at 4) (citing Dkt. 90). However, Plaintiff only had the ability to renew his motion within the relevant discovery period. Discovery closed in 2008. (Dkt. 247). Accordingly, Plaintiff's motion to compel is denied.

## VI.   Motion to Remand (Dkt. 406)

On April 9, 2014, Plaintiff moved for an order of "remand and retention of the Plaintiff to Wendy[sic] or Auburn Correctional Maximum Security Facility . . . at least (30) thirty days prior to July 28, 2014 trial to retrieve discovery documents in (2) two bins from family. . . ." (Dkt. 406 at 1). Plaintiff notes that he is currently housed at a facility approximately 240 miles from Rochester, New York, and that this distance prohibits Plaintiff from contacting his family friend to retain his discovery documents. (*Id.* at 3-4). Plaintiff argues that he is only asking for a temporary order so that he might obtain and organize his trial documents. (Dkt. 416 at 5).

As Mr. Levine notes, the "[p]lacement of an inmate at particular facilities involves determining available cells, known enemies and a variety of other issues best determined by DOCCS and not the Court." (Dkt. 414 at 4).

With regard to Plaintiff's concerns about having the opportunity to review and organize his papers before trial, Plaintiff may have his friend deliver the papers to the Court, where they will be stored until he arrives for trial. Plaintiff will be given a reasonable amount of time to review his papers before the commencement of trial.

As a result, Plaintiff's motion is denied.

## VII.   Motion to Produce, for Subpoenas, to Appoint Counsel (Dkt. 408)

### A.   Inmate Witnesses

Plaintiff asks the Court to issue writs of habeas corpus *ad testificandum* for the following individuals: (1) Omar Adams (12-A-4750); (2) Carlos Vasquez (97-A-1363); (3) Daniel Dieguez (94-R-9305); (4) Francisco Ramos (90-T-3989); (5) Willie Baines

(97-A-7286); (6) Samuel Winbush (13-A-2512); (7) Maurice Boatwright (93-A-1769); (8) Roberto DeJesus (12-A-0084); and (9) Korane Womack (05-B-0022). (Dkt. 408 at 3-6).

According to Mr. Levine, the only requested inmate witnesses remaining in custody include: (1) Francisco Ramos, (90-T-3989); (2) Willie Baines (97-A-7286); (3) Samuel Winbush (13-A-2512); and (4) Roberto DeJesus (12-A-0084). (Dkt. 414).

As to Mr. Ramos, the Court previously sent a letter asking Mr. Ramos to state whether he witnessed any of the incidents alleged and if so, to state what incident was witnessed as well as what Mr. Ramos saw or heard. Mr. Ramos responded that he only recalled one incident "where an altercation occurred between Mr. Barnes and some officers while they were en route to the shower." (Dkt. 367 at 2-3). Mr. Ramos stated that he provided an affidavit to Mr. Barnes concerning that incident, but that he would need to review the affidavit to refresh his recollection. (*Id.* at 3). In a letter order dated November 25, 2013, Judge Siragusa informed Plaintiff that the Court files do not include a statement from Mr. Ramos, and therefore the Judge was unable to determine whether or not Mr. Ramos would be a relevant witness. (*Id.* at 1). However, Judge Siragusa provided Plaintiff the opportunity to respond as to whether or not he wanted to call Mr. Ramos as a witness. (*Id.*). Plaintiff requests the presence of Mr. Ramos to testify as to the April 30, 2001 incident. (Dkt. 408 at 4). The Court will issue a writ of habeas corpus *ad testificandum* to secure the presence of Mr. Ramos at trial.

Plaintiff requests the testimony of inmate witnesses Mr. Baines and Mr. DeJesus to address evidence of events from July 2002. (Dkt. 408 at 4-5). However, the events in

the instant case concern alleged incidents on April 30, 2001, April 18, 2002, September 4, 2002, and October 22, 2002, and therefore any testimony relating to July 2002 incidents would be irrelevant. (Dkt. 248). Although Plaintiff alleged claims related to July 2002 incidents in his original and first amended complaints (Dkt. 1 & Dkt. 28), his second amended complaint governs this case and does not incorporate any claims or allegations relating to incidents in July 2002 (Dkt. 248). Therefore, the Court denies Plaintiff's request for a writ to produce Mr. Baines or Mr. DeJesus.

Plaintiff asks that the Court secure the presence of Mr. Winbush at trial to testify to the alleged October 22, 2002 incident. (Dkt. 408 at 5). Plaintiff attaches a document that he alleges is Mr. Winbush's affidavit as to what he observed on October 22, 2002. (Dkt. 408-3 at 11-12). In this affidavit, Mr. Winbush directly addresses the October incident that Plaintiff alleges. (*Id.*). If Mr. Winbush did actually draft this affidavit, it does appear that Mr. Winbush would be a relevant witness. However, the Court has attempted to contact Mr. Winbush and has not received a response. The Court will send a follow-up letter to Mr. Winbush that states the following:

> Dear Samuel Winbush 13-A-2512:
>
> Jessie Barnes, an inmate in the New York State Department of Correctional and Community Services, has named you as a potential witness in his Federal civil rights case against Randy Banks, Courtney Bennett, T. Berg, Carey Bubcaz, D. Davis, Thomas Dinninny, Gregory Hungerford, James Marshall, Angelo Mastrantonio, Peter Mastrantonio Jr., Donald McIntosh, T. Murley, B. Potter, Franklin Raub, M. Vandergrift, Paul Weed, and H. Wetzel.
>
> The complaint alleges the use of excessive force against Jessie Barnes on April 30, 2001, April 18, 2002, September 4, 2002, and October 22, 2002,

as well as retaliatory harassment against Jessie Barnes on May 31, 2001, by P. Mastrantonio Jr.

In order to determine whether you would qualify as a relevant and necessary witness, would you please answer the following questions:

1.    Did you witness any of the incidents about which Jessie Barnes is suing?

2.    If so, which incident did you witness and what did you see or hear?

Please send your answers by June 13, 2014, to the Court at the following address: Hon. Elizabeth A. Wolford, U.S. District Court, 100 State Street, Rochester, NY 14513. If you qualify as a witness, you will be notified of the trial date.

The Court will forward any response from Mr. Winbush to Plaintiff, and Plaintiff can then inform the Court if he would still like to have Mr. Winbush produced for trial.

## B.    Requests for Subpoenas of Non-Party Witnesses

Plaintiff requests subpoenas for at least three non-party witnesses. (Dkt. 408 at 6). "[T]he Court must . . . determine whether the testimony proffered by these witnesses is relevant, necessary, and not cumulative before the subpoenas shall issue." *Haywood v. Hudson*, No. CV-90-3287 (CPS), 1993 WL 150317, at *4 (E.D.N.Y. Apr. 23, 1993).

Plaintiff requests a subpoena to require former Superintendent Michael McGinnis to speak about Defendant Mastrantonio, Jr.'s "violent propensities," as well as the alleged destruction of the surveillance videotapes. (Dkt. 408 at 6; Dkt. 416 at 2). Defendants oppose this request, stating that "such testimony would not be admissible nor relevant therefore the subpoena should not be issued." (Dkt. 414 at 2). The Court agrees that any testimony by Superintendent McGinnis would be inadmissible or irrelevant. There is no claim that Superintendent McGinnis was personally involved in the alleged incidences.

- 13 -

As a result, he could not testify to personal knowledge at the trial. Plaintiff's request to subpoena Superintendent McGinnis is denied.

Plaintiff requests a subpoena to secure the presence of Sergeant Fields and Lieutenant Strong at trial to testify about the urinalysis test ordered for Plaintiff on September 4, 2002. (Dkt. 408 at 6). Plaintiff claims the incident is relevant because it was the order of the test that led to the following September 4, 2002 incident that is at issue in the present case. (Dkt. 416 at 2). Even if this is true, Plaintiff has offered no explanation to support the conclusion that the ordering of a urinalysis test is relevant to the alleged use of excessive force that occurred later in the day. Therefore, Plaintiff's request to have Sergeant Fields and Lieutenant Strong subpoenaed to testify regarding the September 4, 2002 urinalysis is denied as irrelevant.

Plaintiff asks the Court to issue a subpoena *duces tecum* to Chemung County Supreme Court to obtain the civil file of one of Plaintiff's prior cases. (Dkt. 408 at 7). The facts and circumstances of Plaintiff's prior Supreme Court case are not relevant to the present federal action. Therefore, Plaintiff's request for a subpoena *duces tecum* is denied.

### C.    Expert Witnesses

Plaintiff seeks the testimony of Leslie Jones, Esq. as an "expert witness" to speak to Defendant Mastrantonio, Jr.'s alleged "violent history or propensities" as well as Plaintiff's history of treatment during his incarceration. (Dkt. 408).

Plaintiff has failed to comply with the requirements of Fed. R. Civ. P. 26(a)(2)(A), (B), and (C) that a party seeking to present expert testimony must provide a written report

prepared and signed by the expert witness containing a statement of all "opinions to be expressed and the basis and reasons therefore." Fed. R. Civ. P. 26(a)(2)(B).  "Further, *'pro se* litigants are generally required to inform themselves regarding procedural rules and to comply with them.'" *Abdul-Jabbar v. West*, No. 05-CV-0373F, 2008 WL 596884, at *2 (W.D.N.Y. Feb. 28, 2008) (quoting *Edwards v. INS*, 59 F.3d 5, 8 (2d Cir. 1995)). Plaintiff has procedurally failed to properly request subpoenas for expert witnesses, and therefore his request for a subpoena to obtain Ms. Jones as a witness is denied.

Plaintiff also asks the Court to appoint an "expert videographer" from Lavega & Associates to testify as to the authenticity of the videotapes of the alleged incidents. (Dkt. 408 at 8; Dkt. 416 at 3).

"The Court has broad discretion in determining whether to appoint an expert witness." *Dowdell v. City of Rochester*, No. 11-cv-6493G, 2013 WL 5504145, at *2 (W.D.N.Y. Oct. 2, 2013).  "The Court considers 'such factors as the complexity of the matters to be determined and the Court's need for a neutral, expert view.'" *Id.* (quoting *Benitez v. Mailloux*, No. 9:05-CV-1160, 2007 WL 836873, at *1 (N.D.N.Y. Mar. 15, 2007)).  Here, there is nothing to suggest that the issues are so complex as to require the Court to appoint an expert witness.  Accordingly, Plaintiff's request for the appointment of an expert videographer witness is denied.

### D.   Motion to Appoint a Private Investigator

Plaintiff requests that the Court appoint a private investigator to Plaintiff's case to "investigate whereabouts and the availability of the witnesses listed by the plaintiff." (Dkt. 408 at 8).  Plaintiff has not provided a sufficient explanation for why the Court

should engage in appointing a private investigator to permit Plaintiff to locate potential witnesses. Indeed, the trial date is quickly approaching. If the Plaintiff is able, he is free to personally hire and utilize the services of a private investigator. Therefore, Plaintiff's request for the appointment of a private investigator is denied.

E. **Motion for Appointment of Counsel**

Plaintiff requests the appointment of *pro bono* counsel or, in the alternative, a legal advisor. (Dkt. 408 at 8-9). The Court has addressed Plaintiff's request on numerous occasions, and most recently in a Decision and Order dated March 20, 2014. (Dkt. 387). Plaintiff has presented no new information to persuade the Court to find that Plaintiff requires the assistance of *pro bono* counsel. Accordingly, Plaintiff's request for the appointment of counsel, or, in the alternative, a legal advisor, is denied.

Therefore, Plaintiff's motion to produce, for subpoenas, and to appoint counsel, as well as other requests within the text of the motion, are granted in part and denied in part as set forth above.

## VIII. Motion for a "Gag" Order (Dkt. 412)

In an April 14, 2014 motion, Plaintiff requests a "gag order" against Defendants to "inform all of its court agents and staff to inform court should they observe Randy Banks or any other Defendants making faces, taunting, or making any jestures[sic] which would humiliate, antagonize, or make a mockery and or make side show or spectacle of this trial. . . ." (Dkt. 412 at 4).[2] Plaintiff requests a legal instrument that does not exist. A

---

[2]      In this motion, Plaintiff again requests that Defendant Bennett and Attorney General Eric T. Schneiderman be compelled to produce the dates, name, title, and

gag order is typically issued by a court to place general limits on speech outside of the courtroom concerning a case. *See Dorsett v. County of Nassau*, 289 F.R.D. 54, 64 (E.D.N.Y. 2012) (distinguishing a gag order from a protective order, and describing a gag order). The Court expects all trial participants to conduct themselves in a professional manner. Plaintiff's motion for a "gag" order is denied.

## IX.   Motion for Extension of Time to File Pretrial Documents (Dkt. 419)

In a letter dated May 26, 2014, which this Court construes as a motion for an extension of time to file, Plaintiff asks the Court to extend the time for Plaintiff to file his responses to the Pretrial Order. (Dkt. 419). Plaintiff indicates that his production of documents will be delayed due to the time it takes to get copies back from the correctional facility's law library. (*Id.*). Currently, all pretrial submissions are due by June 1, 2014. (Dkt. 386). Plaintiff requests an extension to June 17, 2014. (Dkt. 419). Plaintiff's request to extend the time for pretrial submissions is granted. The deadline of June 1, 2014, set forth in the Pretrial Order (Dkt. 386) is hereby changed to June 17, 2014.

---

television networks involved in the "restricted diet" videos in which Defendant Bennett allegedly appeared. (Dkt. 412 at 2). This issue has been addressed. Further, Plaintiff requests a subpoena to produce copies of newspaper articles from *The New York Times* as well as *The Albany Times Union* that allegedly addressed the same "restricted diet" situation. (Dkt. 412 at 5). Discovery is closed. (Dkt. 247). Plaintiff's requests are denied.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED, that the Court reserves decision on Plaintiff's Motion in Limine (Dkt. 327) and Motion for Sanctions (Dkt. 395) until the time of trial;

ORDERED, that Plaintiff's Motion for Miscellaneous Relief (Dkt. 389) is denied;

ORDERED, that Plaintiff's Request for a Jury Trial (Dkt. 402) is denied;

ORDERED, that Plaintiff's Motion for Extension of Time to File (Dkt. 404) is denied;

ORDERED, that Plaintiff's Motion to Compel (Dkt. 405) is denied;

ORDERED, that Plaintiff's Motion to Remand (Dkt. 406) is denied;

ORDERED, that Plaintiff's Motion to Produce, for Subpoenas, and to Appoint Counsel (Dkt. 408) is granted in part and denied in part in accordance with the reasons set forth in this Decision and Order;

ORDERED, that Plaintiff's Motion for a "Gag" Order (Dkt. 412) is denied; and

ORDERED, that Plaintiff's Motion for Extension of Time to File is granted, and all pretrial submissions are now due by June 17, 2014.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:     May 30, 2014
           Rochester, New York

- 18 -